McArthur vs. The Green Bay and Mississippi Canal Company.

LYON, J., did not hear the argument, and takes no part in the decision of this cause.

===

McARTHUR vs. THE GREEN BAY AND MISSISSIPPI CANAL COMPANY.

| | |
|---|---|
| 34 | 139 |
| 81 | 211 |
| 34 | 139 |
| d96 | 17 |
| 96 | 475 |
| 34 | 139 |
| 61 LRA 863n | |

CANAL: PUBLIC HIGHWAY: SUNDAY LAWS. (1) *Canal company liable for injuries to property caused by unsafe condition of canal.* (3) *Rights of public in canal on Sunday.* (4) *Regulation as to use of canal on Sunday held unreasonable.* (6) *Violation of Sunday laws by plaintiff will not prevent recovery for defendant's negligence.*

COUNTERCLAIM. (2) *Defendant may counterclaim for damages to its canal from plaintiff's negligence.*

EVIDENCE. (5) *As to the existence of a certain regulation of the ·defendant company.*

PARTY PLAINTIFF. (7) *When assignee of right of action for tort may sue.*

DAMAGES. (8) *Interest in actions founded on negligence.*

1. The defendant company is bound to use all ordinary and reasonable means to guard against the breaking away of the embankment of its canal; and failing to do so, if a break therein occur, resulting in an injury to the person or property of others (who are free from contributory negligence), defendant is liable for the damages.

2. In an action for such damages, the defendant company may allege, not only as a defense, but also as a ground of *counterclaim*, that the breach in the embankment of its canal was caused by plaintiff's negligence. R. S., ch. 125, sec. 11, subd. 1.

3. Defendant's canal is a *public highway*, which all persons, on complying with all lawful requirements, may not only navigate at their pleasure on all days except Sundays, but may also navigate *on Sunday in case of necessity*.

4. A regulation that "no boat will be allowed to pass the lock on Sunday without a written permit from the superintendent or his assistant, and this permit will not be granted unless in case of actual necessity," *held* to be *unreasonable*, and one which neither the superintendent nor the board of directors of the defendant company has power to establish:

(1) Because it requires, in cases where such navigation on Sunday

McArthur vs. The Green Bay and Mississippi Canal Company.

is necessary and lawful, that such permit be obtained of an *officer who may not be accessible.*

(2) Because the boat owner has the *right to determine for himself* the question of necessity for Sunday navigation, subject only to his liability under the statute.

5. It not appearing in this case that said regulation was ever adopted by the *board of directors* of the company, but only that it was made by the *superintendent* and printed on the back of receipts or clearances, the circuit court did not err in holding that the existence of such regulation was not proved.

6. The mere fact that plaintiff was attempting to pass his boat through the canal *on Sunday, in violation of the statute,* when the injury was received, would not prevent his recovery of damages for injuries resulting from the negligence of defendant or its servants. *Sutton v. Town of Wauwatosa,* 29 Wis., 21.

7. The *assignee of a thing in action* not arising out of a contract may *maintain an action* thereon (notwithstanding sec. 12, ch. 122, R. S.) in all cases where the cause of action is *assignable in equity;* and this includes rights of action for injuries to, or the conversion of, personal property.

8. In an action for injuries to personal property caused by defendant's negligence, there was no error in instructing the jury that they *might* allow *interest* from the commencement of the action.

APPEAL from the Circuit Court for *Winnebago* County.

On Sunday, May 3d, 1868, the tug-boat Winneconne, having in tow a barge belonging to the plaintiff, and bound for Portage City, approached the lower lock in the canal of the defendant, which connects the waters of the Fox and Wisconsin rivers, for the purpose of passing through the lock into the canal. The usual signal to the lock-tender of the defendant was given, but he did not respond thereto, and the tug and barge were passed through the lock under the direction of the captain of the tug. Immediately thereafter it was discovered that the water had broken through or run over the embankment of the canal some distance above the boats, and the embankment was being rapidly washed out and the canal emptied. The tug was dropped back into the lock, but the barge remained in the canal; and as the water receded, it settled upon a sand bar

in the bottom of the canal at that point. The apex of the bar happened to be under the center of the barge holding her up in the middle, while her ends settled and broke her badly. The tug was detained several days by reason of the break in the embankment.

This action was brought to recover damages for the injury to the barge and the detention of the tug; and the complaint alleges that such injury and detention were caused by the negligence of the defendant in the management of the canal. The answer of the defendant denies the negligence charged in the complaint, and alleges that the break was caused by the negligence of the persons in charge of the tug and barge, and by their disregard of the laws of the state and of the regulations of the defendant in respect to the use of the canal.

It appeared from the evidence on the trial, that there is a guard lock at the Wisconsin river end of the canal, the gates of which are constructed with valves in them to regulate the flow of water from the river into the canal. The gates of the lower lock are similarly constructed for the purpose of increasing the discharge of water from the canal, if necessary. There is also a mill near the lower lock, through the gates of which water may also be discharged from the canal. The Wisconsin river, at an ordinary stage of water, is several feet higher than the Fox, and, at the time of the break, the former river was very high, and the latter quite low, and some of the valves in the gates of the guard lock had been left open by the lock tender, and a large volume of water was being discharged into the canal. The embankment to the canal where the break occurred, was made of sand, and was capable of resisting a great lateral pressure, but would speedily give way if overflowed. The testimony tends to show that when the tug and barge approached the lower lock, the valves in the gates of that lock were all closed and the water was discharging over the gates, and that the canal was then full. It is probable that the break was caused by the water overflowing the embankment.

The plaintiff was not the owner of the tug; but before the action was commenced, her owners assigned to him their claim for damages for the detention thereof. An objection that this claim is not assignable so that the plaintiff may maintain an action therefor in his own name, was made at the trial and overruled by the court.

The court charged the jury, among other things, as follows: "The first question that I will dispose of, is the question of the navigation of this canal on Sunday. In order to give the defendant the full benefit of all the questions that he has raised here, I will charge you that the canal spoken of under the ordinance of '87, and the subsequent acts of congress and of the legislature of Wisconsin in relation thereto, is, and was at the time this injury happened, a public highway, and that whilst there are laws in this state which impose a penalty for doing business or labor upon the Sabbath day, yet they are not such as to restrict the citizen or the person having the right to operate upon this canal and navigate it, from the use of it on that day; that he had the same right to use it as a public highway upon that day as he had upon any other one." The other rulings of the court, and the remaining testimony, are sufficiently stated in the opinion.

The plaintiff recovered for the injury to the barge and for the detention of the tug; and from the judgment in his favor, the defendant appealed.

*Sloan, Stevens & Morris,* for appellant:

1. The evidence shows that the injury complained of by the plaintiff resulted from the improper and negligent use of the lock, in closing the waste gates, and keeping them closed, so that the water in the canal overflowed its banks. As the lock was managed by the plaintiff, and not by the defendant or its agents, the only ground on which the defendant can be made liable is its neglect of its duty to have a competent lock-tender present. If defendant failed of its duty in that respect, plaintiff might have waited until the lock-tender came, and have re-

JANUARY TERM, 1874.  143

McArthur vs. The Green Bay and Mississippi Canal Company.

covered all damages sustained by reason of the delay. But plaintiff was not entitled to tend the lock himself, and then, if it was so unskillfully or negligently managed that injury resulted to his boats, recover damages for such injury. 2. Tending the lock on Sunday would be clearly labor, business or work within sec. 5, ch. 183, R. S., and would be an unlawful act. There could be no duty resting on defendant to do such unlawful act. 3. The act of the plaintiff in tending the lock himself was an unlawful one, which was connected with and directly contributed to the injury, and should therefore prevent his recovery. *Sutton v. Wauwatosa*, 29 Wis., 20. 4. Plaintiff's attempt to lock himself through *on Sunday* was in violation of the statute, and directly produced the injury; and this is fatal to a recovery. 5. The instructions of the court below on this subject were, in substance, that it was defendant's duty to use all reasonable care in operating the canal on Sunday as fully as on other days; that it was bound to keep a lock-tender on duty upon that day; and that if the injury complained of arose from a neglect of this duty, plaintiff might recover therefrom; in other words, that not only has plaintiff a lawful right to navigate the canal on Sunday, in the face of the statute, but defendant is bound to furnish all needful assistance in thus violating the express provisions of the statute, and in desecrating the Sabbath. Before this rule is established, the consequences should be fully considered. Common carriers are by law compelled to transport the property of all persons requiring it to be carried. The right of the public to have their property transported by such carriers on Sunday, is at least equal to the right of the plaintiff to have defendant assist him in navigating this canal on Sunday. The same rule which would require defendant to operate the locks of its canal on Sunday, would require all common carriers to transport property on Sunday.; and thus the statute prohibiting work, labor and the transaction of business on that day would be practically abolished by judicial decision.

McArthur vs. The Green Bay and Mississippi Canal Company.

*Felker & Weisbrod*, for respondent :

1. There was no error in rejecting evidence as to the amount of defendant's damages, under its counterclaim. (1) The action being in tort, a counterclaim is not permitted. (2) The gist of the action is the wrongful act of the defendant in not properly maintaining its canal. The counterclaim does not arise out of this transaction, but out of another, viz.: the alleged wrongful act of the owners of the tug, whom plaintiff had hired to tow his barge. 30 Wis., 359 ; 40 Barb., 9. (3) The jury having found for the plaintiff, defendant was not prejudiced by rejecting proof of his damages. 28 Wis., 487, 628. 2. Defendant was bound to use reasonable care in so managing its canal and keeping it in repair that it could be navigated with safety to persons and property. Shearm & Redf. on Negligence, 286 ; *Parnaby v. Lancaster Canal Co.*, 39 E. C. L., 54 (11 Ad. & El., 223). The question of negligence was fairly submitted to the jury, and there was abundant evidence to support the verdict. 3. The act of plaintiff in navigating the canal on the Lord's day, even if unlawful, will not prevent a recovery. *Sutton v. Wauwatosa*, 29 Wis., 20 ; 20 How. (U. S.), 209 ; 4 Ohio St., 566. 4. It appeared from the evidence that the lock-tender had given permission to the captain to lock through if he was not there ; that it was a common practice to do so ; that it was a common practice to navigate the canal on Sunday ; and that nobody had ever been forbidden. Defendant was therefore not guilty of any negligence in attempting to lock himself through, in the absense of the lock-tender. 5. There was no error in refusing to receive in evidence the pretended regulation as to passing boats on Sunday. (1) A bylaw cannot be proved by parol. *Lumbard v. Aldrich*, 8 N. H., 31. (2) It affirmatively appeared by the testimony that no such by-law had ever been adopted by the company. (3) There was no evidence that this regulation had ever been reputed to be a by-law of the company, or that it had been established by any authorized agent of the defendant. (4) It was void. The

canal is a public highway. Ordinance of 1787; Const. of Wis., art. 14, sec. 1; R. S., 1858, ch. 41, sec. 1; Act of Congress approved Aug. 8, 1846 (R. S., 1858, p. 1080). Defendant cannot make a valid by-law prohibiting the use of such highway on Sunday. A. & A. on Corp., § 345; *Calder Nav. Co. v. Pilling*, 14 Mees. & W., 75.

The cause was decided, and the following opinion filed, at the June term, 1873.

LYON, J. That the defendant is under a legal obligation to use all ordinary and reasonable means and appliances to guard against the breaking away of the embankment of its canal, and, failing to do so, if a break therein occur which results in an injury to the person or property of others (the latter being free from contributory negligence), that the defendant is liable to respond in damages for such injury, is too clear for argument.

Had the injury of which the plaintiff complains occurred on any day other than the Sabbath, there would be no doubt that the learned circuit judge gave the law correctly to the jury. In a very clear and concise manner he submitted to them the questions, whether the defendant was negligent in permitting too much water to flow into the canal from the Wisconsin river, or in not discharging sufficient water through the mill and lower lock gates or valves, by means whereof the embankment of the canal was overflowed and broken; and whether the persons in charge of the tug and barge were guilty of negligence in passing the same through the lower lock into the canal, which contributed to cause the break in the canal, and the resulting injury. There was sufficient testimony tending to show such negligence on the part of the defendant, to authorize the court to submit the former question to the jury; and a verdict for the plaintiff is, in effect, a finding that the defendant was negligent in that behalf, and that the plaintiff was not guilty of any negligence which contributed to the injury.

It may as well be remarked here as elsewhere, that the ver-

dict, which acquits the plaintiff or his agents of all negligence, renders quite immaterial the testimony offered by the defendant and rejected by the court, concerning the amount of damages which the defendant suffered by reason of the break in the embankment of the canal. The defendant alleged in its answer that such break was caused by the negligence of the persons in charge of the tug and barge, and demanded damages therefor; and this testimony was offered in support of such counterclaim. The defendant was permitted to show the conduct of those persons while passing the lock and navigating the canal, and all of the facts in any manner connected with the break, and was only prevented from showing the amount of damages it suffered thereby. It having become a verity in the case that the plaintiff was free from contributory negligence, he is not liable for any such damages, and the amount thereof is of no importance.

It should be observed, however, that no good reason is perceived why the counterclaim is not a valid one. If it does not arise out of the transaction set forth in the complaint, it certainly is connected with the subject of the action. R. S., ch. 125, sec. 11, subd. 1. Were the plaintiff justly chargeable with negligence which produced or caused the break in the embankment (the defendant being free from negligence which contributed thereto), we think that the defendant might lawfully recover damages therefor in this action, under and by virtue of such counterclaim. In other words, we think that the defendant is entitled to the same relief in this action, under the pleadings, that it would have been entitled to had it brought an action against the plaintiff for the cause stated in the counterclaim.

These preliminary observations bring us to the consideration of the principal question in the case, and the only one remaining to be determined, which is, whether the use of the lock and canal by the plaintiff on Sunday was negligence on his part which defeats the action. What has been said respecting the rejection of testimony has no reference to this question; for if

such user on Sunday was negligence, the rejected testimony concerning the amount of the defendant's damages should have been received under the counterclaim.

· The following instruction was asked on behalf of the defendant, and refused : " If the attempt was made by plaintiff, or the owners of the tug, or his agents or servants, to pass the lock and canal on Sunday without the permission and assistance of the lock-tender, it was an act of negligence, because of which the plaintiff cannot recover." The court held that the mere fact that the plaintiff or his agents was or were using the lock and canal on Sunday was not negligence.

An attempt was made on the trial to show the existence of a regulation of the defendant prohibiting boats from passing through locks on Sunday without the consent in writing of certain agents of the defendant. It appeared that this regulation was printed on the back of receipts or clearances, one or more of which, the testimony tended to show, had been issued to the captain of the tug. But it does not appear that either he or the plaintiff had actual knowledge of the regulation, or that the same was ever adopted by the board of directors of the defendant. The regulation is as follows : " No boat will be allowed to pass the lock on Sunday without a written permit from the superintendent or his assistant; and this permit will not be granted, unless in cases of actual necessity." It is claimed that this regulation was made by the superintendent, and that he had authority, under the general powers of such agents, to make it, without the concurrence of the board of directors. But we are of the opinion that neither the superintendent nor board of directors has the power to make and enforce such a regulation. The canal of the defendant is a public highway, which all persons, upon complying with all lawful requirements, may navigate and use at their pleasure on all days except Sunday, and on Sunday in cases of necessity. This regulation makes the superintendent or his assistant, and him alone, the judge of

McArthur vs. The Green Bay and Mississippi Canal Company.

the existence of such necessity, and prohibits the use of the locks on Sunday until the person who desires to pass his boat through one of them hunts up the superintendent or his assistant (who may be a hundred miles away), satisfies him that the case is one of actual necessity, and obtains a written permit from him to pass his boat through the locks. A boat might arrive at the lower lock near Portage City on Sunday, with a cargo for that city, at a time when the Fox river was rapidly falling; and it might be that unless she were allowed to pass the lock at once, so as to discharge her cargo and return immediately, the river would become too low for her to proceed on her return trip. This would be a case of most urgent necessity; and yet, under the regulation we are considering, unless the superintendent or his assistant should be accessible, or, if there present, if he should adjudge that the case was not one of necessity, and hence refuse the permit, the boat must tie up until the next day, and the parties injured thereby would be remediless, however serious the consequences of the delay might be to them. The regulation is clearly unreasonable, and therefore void. If a person navigates the canal on Sunday, he does so at his peril. If it be a case of actual necessity, within the statute, he is blameless; otherwise, he is liable to suffer the consequences of violating the statute.

The foregoing views relative to the invalidity of the regulation are sustained by the supreme court of Illinois, in the case of *Tyler v. The Western Union Telegraph Co.*, not yet reported, but which may be found in the Albany Law Journal, vol. 8, p. 181. The action was to recover damages for a mistake in transmitting an unrepeated message. The telegraph company had adopted regulations restricting its liability for such mistakes unless the message was insured, and providing that no person except the superintendent of the company could make a contract for such insurance. The court held the regulations unreasonable, inoperative and void.

In the present case, the court held that the existence of the regulation under consideration was not proved. We think that the ruling was correct.

The proposed instruction which the court refused to give is predicated upon the supposed validity of the regulation, and the same being invalid, the instruction was properly refused. Besides, while there was no express permission given to the captain of the tug to lock his boat and the barge through on Sunday, neither was he forbidden to do so. The undisputed testimony is, that the defendant's lock-tender at Portage City told the captain of the tug, on his trip next preceding that when the break occurred, if he, the lock-tender, was not there when the captain made his next trip, to lock through himself. The usual signals were given from the tug, the lock-tender was not there, and the captain passed the tug and barge through the lock and into the canal. The jury have found that he did so in a proper manner, and without negligence. Hence it appears that the captain of the tug (who, for the purposes of this case, is regarded as the agent of the plaintiff) had the permission of the lock-tender to pass the lock without the presence and assistance of the latter. This is another reason why the proposed instruction was properly refused.

If, as I have attempted to show, the regulation in question is invalid, and the captain of the tug had authority, under the circumstances, to pass the boats through the lock, and did so with due care, the only ground upon which contributory negligence can be imputed to the plaintiff, is the mere fact that the boats were thus passed through the lock in violation of the statute which prohibits the doing of unnecessary work on Sunday; and hence the plaintiff is in the same position as was the plaintiff in *Sutton v. The Town of Wauwatosa*, 29 Wis., 21. It was there held that in an action brought against a town to recover for injuries caused by a defect in the highway, the mere fact that the plaintiff was unlawfully traveling upon such highway on Sunday, at the time of the injury, is not, of itself, con-

tributory negligence. That case is decisive of the question to be determined here. While it does not demonstrate that the plaintiff in the present case had a legal right to navigate the canal with his boats on Sunday, it asserts the principle that, if he did so, being otherwise free from blame, and was injured because of the negligence of the defendant, such violation of the statute is not contributory negligence on his part, and does not interfere with his right to recover. Or, stated in another form, the same state of facts which would entitle the plaintiff to recover, had the injury happened on any day other than Sunday, will entitle him to recover in this action, notwithstanding the injury was received on Sunday, and when he was unlawfully navigating the canal with his boats. The circuit judge substantially so ruled, and we think that he ruled correctly.

We are confirmed in the opinion that the case of *Sutton v. The Town of Wauwatosa* was correctly decided, by the fact that the supreme judicial court of Massachusetts has, in three late cases, substantially indorsed the views expressed by the chief justice in his opinion in the former case, in opposition to the older decisions of that court, which are referred to and commented upon in that opinion. In *Steele v. Burkhardt*, 104 Mass., 59, it was held that "one who places his horse and wagon in a street in a city, transversely to the course of the street, while loading articles which a city ordinance permits to be loaded only in vehicles placed lengthwise and as near as possible to the sidewalk, is not restrained by the mere fact of thus violating the ordinance, from maintaining an action against one who injures the horse by negligently driving another wagon against it, when by exercising more care he might have avoided doing so." CHAPMAN, C. J., concludes his opinion in that case with the following language: "It is true, generally, that, while no person can maintain an action to which he must trace his title through his own breach of the law, yet the fact that he is breaking the law does not leave him remediless for

McArthur vs. The Green Bay and Mississippi Canal Company.

injuries. willfully or carelessly done to him, and to which his own conduct has not contributed." To the same effect is the case of *Kearns v. Sowden*, reported in a note to *Steele v. Burkhardt*, on page 63.

In *Hall v. Corcoran*, 107 Mass., 251, it was held that a person who hires a horse of its owner to drive to a particular place, and drives it to another place, is liable in tort for the conversion of the horse, although the contract for hiring was made on the Lord's day, and, as both parties knew, for pleasure only, and therefore illegal and void. This case expressly overrules that of *Gregg v. Wyman*, 4 Cush., 322, which held the opposite doctrine.

No mention was made in the oral argument of the counsel for the defendant, and we find none in their written arguments since submitted, to the objection, taken at the trial, that the plaintiff can not maintain an action in his own name for the damages occasioned by the detention of the tug. The objection not being pressed, we conclude that it is waived, in order that the whole matter may be disposed of in this action. Hence we have not considered it.

*By the Court.* — The judgment of the circuit court is affirmed.

A motion by the appellant for a rehearing was denied, and the following opinion filed, at the January term, 1874.

Lyon, J. · We have carefully considered the very earnest argument of the learned counsel for the defendant in support of the motion for a rehearing, and have endeavored fully to review the grounds of our former decision of the case, but we are entirely unable to perceive anything in the case which forces upon us the alternative of receding from our former views and reversing the judgment of the circuit court, or giving up (to use the language of the learned counsel, and their italics also) "the pretense of administering *impartial* justice." Neither

McArthur vs. The Green Bay and Mississippi Canal Company.

does our re-examination of the case lead us to believe, or even suspect, that we have attempted to evade any difficulty in the way of an affirmance of such judgment. We thought when the former decision was announced, and still think, that the opinion heretofore filed, fairly stated and discussed the material questions raised on the original argument of the case, and that the principles which controlled our decision were sound legal principles, and properly applicable to the case. Entertaining these views, we do not see any necessity for further discussion of the same questions.

The question whether the claim for damages for the detention of the tug is assignable, so that the plaintiff, who is the assignee of such claim, may maintain an action thereon in his own name, has not been determined, for reasons stated in the former opinion. The learned counsel for the defendant now inform us that they did not intend to waive their objection to the right of the plaintiff to recover such damages, and call upon us to determine the question on this motion; but, unfortunately for us, they have not favored us with any argument or citation of authorities on the question. Still it is our duty to determine it.

The action is to recover damages for injuries to personal property, caused by the negligence of the defendant. It does not arise out of a contract, but sounds in tort. Beyond all question, a right of action for injuries to, or the conversion of, personal property, while not assignable at the common law, is assignable in equity, unless that quality is taken away by sec. 12, ch. 122, R. S., which is as follows: " Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section fourteen ; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of a contract." (Tay. Stats., 1418, § 12). The exception mentioned has no relation to this action. The above provision is contained in the New York code of pro cedure ; and it has been held by the courts of that state in sev

eral cases, that the last clause of the section does not prohibit the assignment of a thing in action which was assignable in equity before the code was enacted, but only relates to, or precludes the assignment of, those choses in action for personal torts which die with the party and which never were assignable either at law or in equity.    Hence those cases hold that the assignee of a thing in action not arising out of a contract may maintain an action thereon in his own name, in all cases where the cause of action is assignable in equity.

Some of the cases hold, or strongly intimate, that survivorship is the test of assignability — that is to say, that every chose in action which survives to the personal representative of the party, is assignable in equity, and may be sued upon in the name of the assignee.    But whether this be the true test or not, we think the New York courts have given the statute a sound interpretation in respect to the assignability of claims for damages for injuries to property.

The following are some of the authorities which sustain the principles above stated: *The People ex rel. Stanton v. Tioga C. P.*, 19 Wend., 73; *McKee v. Judd*, 12 N. Y., 622; *Waldron v. Willard*, 17 id., 466; *Merrill v. Grinnell*, 30 id., 594; *Fulton Fire Ins. Co. v. Baldwin*, 37 id., 648; *Butler v. New York and Erie R. R. Co.*, 22 Barb., 110; *Dininny v. Fay*, 38 id., 18; 1 Chitty's Pl., 69.    These authorities are cited in the brief of counsel for the plaintiff.    See also R. S., ch. 135., sec. 2, as to survival of actions, and *Noonan v. Orton*, decided at the present term. •

It must be held that the action to recover damages for the detention of the tug was properly brought in the name of the plaintiff.

It is further urged as ground for granting a rehearing, that the court erred in the charge to the jury concerning interest. The charge was as follows: " You may allow interest from the day this action was commenced — the 31st day of December, 1869."    We see no error in this instruction, and were it erro-

neous no exception was taken to it on the trial, and we can not review it. The council concede, however, that it was compe' tent for the jury to allow such interest on the damages recov ered by the plaintiff, in their discretion. It would seem that this is what the court intended to tell the jury, and is the fair and reasonable construction of the language used.

*By the Court.* — Motion denied.